## THE AMERICA et al.

### (District Court, E. D. New York.  June 23, 1899.)

COLLISION—LIABILITY OF TUG FOR INJURY BY TOW.

> A tug with three barges in tow, singled on hawsers 175 fathoms in length, which without excuse passed dangerously near an anchored vessel, against which one of the barges was swept by the tide, cannot shift the burden of responsibility for the collision on the tow, merely because she herself passed in safety, as it was her duty to make due allowance for the effect of the tide on her tow, and her own fault was the proximate cause of the injury, though there may have been error of judgment in the management of the barge in extremis.

In Admiralty.  Suit to recover damages for collision.

Cowen, Wing, Putnam & Burlingham, for libelants.
Carpenter & Park, for The America.
James Armstrong, for The Indian Ridge.

THOMAS, District Judge.  On November 11, 1898, the barge Indian Ridge, in tow of the tug America, collided with and injured the ship Susanne, lying within the anchorage grounds off Staten Island, and heading about due north.  The night was clear, the tide ebb, and the wind northwesterly.  The damages to the ship, and the liability of the tug and barge therefor, are stipulated.  The tug and barge each charge the other with the fault causing the collision.

The America had three barges in tow, singled out on hawsers of about 175 fathoms in length.  The Indian Ridge was the first barge. The America claims to have proceeded upon a course southwest by south from Governor's Island, until the light upon Norton's Point was observed coming out by Ft. Hamilton, and that she then changed her course to south down the channel, and that while on such course she saw about three points on her starboard bow, and about 1,500 feet away, the anchor light of the ship, and that when abreast of said light, and on a course of about 600 feet from the ship, it was discovered that the Indian Ridge was not following the tug, but was sheering to the starboard, and that it continued to sheer until it struck the ship on her port bow.  The captain of the tug states that "there was a slight smoke from the Bayonne Copper Works, but nothing only just for a minute or so."  This claim of the America may now be tested.  French, the master of the America, on the 22d of November, 1898, made and swore to a statement purporting to give an account of the accident, in which he states that he sighted a ship at anchor about four points off his starboard bow, and about 500 yards distant; that, on account of a dense smoke coming from the Bayonne, N. J., Oil Works, he did not see the ship's lights sooner, and continues:

> "I immediately put the wheel starboard, and the barge Indian Ridge put his wheel to port, and went to the westward of the ship.  The hawser parted on the America's butts.  The barge Indian Ridge struck the ship a glancing blow, and went clear and anchored.  The tug went about 100 yards clear of the ship. In my judgment, if the barge had followed the tug there would not have been any collision."

This statement is not in entire accord with the master's present evidence. But there are other reasons for believing that the present claim of the master of the America is untenable. The insistence that after leaving Governor's Island she proceeded upon a course southwest by south, until the light upon Norton's Point was observed coming out by Ft. Hamilton, and that she then changed her course to the south, and held such course down the channel, if true, would preclude her going upon the anchorage grounds at all. Hence the adoption of these courses would necessitate the conclusion that the Susanne was not within the anchorage grounds, but was some distance to the eastward thereof. However, it satisfactorily appears that the Susanne was upon the anchorage grounds, and that the America continued upon her first course until she was also upon the anchorage grounds, and that she did not then pursue the course to the south, but adopted a course somewhat to the eastward of south, whereby she ran across the bows of the Susanne, and so near to the same as to allow the ebb tide to take the Indian Ridge in dangerous proximity to the ship. It is undoubtedly true that the master of the Indian Ridge ported his wheel, and ran to the port side of the ship; but he did this in extremis, for the purpose of producing a glancing blow, which was intended to diminish the damage threatened by the tug's negligence. The claim of the America is that the Indian Ridge, with a powerful tug towing her, and two heavy barges in the rear, sheered out of her course 600 feet or more, so as to get on the port side of the ship. Such a thing may not be impossible, but it seems to the court too improbable for adoption without a great preponderance of evidence. The wind was from the northwest, the tide was ebb, the tug was presumably ample to do her work, and, as has been stated, the barge, to make the sheer claimed, must have overcome the powerful influences operating both upon her bow and her stern.

It is urged that, as the tug safely passed the ship, the burden is upon the barge to explain her collision with it. The tug lays the course and furnishes the power, and it is the usual duty of the tow to follow the tug. If the tug leads the tow so near to an anchored ship that the tide carries her against it, the burden is not shifted from the tug to the tow by the fact that the tug herself escaped collision. It is the duty of the tug to provide sufficient space between her course and other vessels to allow, not only her own safe passage, but that of her tow; and if she be towing three barges, singled out on hawsers of the length of 175 fathoms, the tug must consider the action of the tide upon such tow. The tug was within the anchorage grounds without excuse, she passed too near the ship, and these faults were the proximate causes of the collision. The contention that the barge did not keep a proper lookout is not sustained. The libelant should have a decree for his damages and costs against both vessels, collectible in the first instance against the America.